# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSANA MANING,<br><br>                        Petitioner,<br><br>v.<br><br>CHRISTOPHER LaROSE, et al,<br><br>                      Respondents. | Case No.: 26-cv-0219-BJC-SBC<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** |

Pending before the Court is Petitioner Susana Maning's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"). ECF No. 1. Respondents filed a response to the Petition. ECF No. 6. Petitioner filed a Traverse. ECF No. 7. For the reasons set forth below, the Petition is **GRANTED.**

## I.    BACKGROUND

Petitioner, a transgender female, is a native and citizen of Mexico who entered the United States on February 27, 2001. Declaration of La'Shaniece Wilson, ECF No. 6-1 ¶ 4. On March 7, 2001, Petitioner was released from ICE custody on bond. *Id.* ¶ 4. On August 8, 2001, an Immigration Judge (IJ) issued a final order of deportation. *Id.* ¶ 5. On May 7, 2002, Petitioner was again taken into ICE custody and on May 10, 2002, Petitioner was released from custody pursuant to an Order of Supervision. *Id.* ¶ 6. On April 11, 2008, Petitioner was once again taken into ICE custody and on that same date, Petitioner was released from custody on an Order of Supervision. *Id.* ¶ 7.

On December 3, 2021, an immigration judge granted withholding of removal to

Mexico under INA § 241(b)(3). *Id.* ¶ 8. On December 5, 2025, ICE enrolled Petitioner in the Alternatives to Detention (ATD) program. *Id.* ¶ 9.

On December 19, 2025, Petitioner was arrested at a routine ICE check-in, and she was put into detention at Otay Mesa Detention Center, where she remains today. Petitioner has abided by the terms of the Order of Supervision for nearly 25 years, and she has regularly appeared for ICE check-ins. ECF No. 1 ¶ 40, 41.

On the day she was taken into custody, Petitioner was presented with a Notice of Revocation that informed Petitioner that her "order of supervision has been revoked" "based on a review of your official alien file and a determination that there are changed circumstances in your case." Notice of Revocation, ECF No. 6-2. The Notice stated:

> ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you. ICE will remand you into custody and will attempt removal to a third alternate country.

ECF No. 6-2. Petitioner claims she was handcuffed and detained the moment she entered the interview room, and the documents were presented after she had already been detained. ECF No. 7 at 12. She claims that she had no notice or opportunity to prepare for her interview, and she has only a rudimentary understanding of English. *Id.*

On December 31, 2025, Petitioner had a bond hearing before an immigration judge, and the court determined that she was not a flight risk or danger to the community. ECF No. 1 ¶ 44. She was granted the minimum amount of bond, $1,500, but DHS filed an appeal, which stays Petitioner's release. ECF No. 1¶ 44; ECF No. 6-1 ¶ 11.

On January 7, 2026, ICE submitted a request to ERO Removal and International Operations (RIO) headquarters for an update on identifying a third country for removal. ECF No 6-1 ¶ 12. As of January 26, 2026, Respondents stated that "[t]he request remains pending. ICE is still in the process of identifying third countries that may be willing to accept Petitioner for removal." ECF No. 6-1 ¶ 13.

Petitioner contends that her detention violates the Administrative Procedures Act

(APA) and the Due Process Clause of the Fifth Amendment. ECF No. 1 at 12-13. She requests that the Court order Respondents to (1) immediately release her from custody, (2) enjoin Respondents from re-detaining Petitioner unless they provide notice and an individualized determination that she is a flight risk or danger to the community; and (3) enjoin Respondents from imposing any form of Alternative to Detention, including an ankle monitor, home check in schedule, or the continued confiscation of any documents or property she had when detained. ECF No. 1 at 17; ECF No. 7 at 15. For the following reasons, the Court **GRANTS** the Petition.

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Under 28 U.S.C. § 2241, a district court has the authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## III.   DISUCSSION

### A.   Jurisdiction

Under 8 U.S.C. § 1252(g), except as otherwise stated, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The Ninth Circuit has made clear, however, that § 1252(g) must be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, No. 24-631,

1  at *6, *14–15 (9th Cir. Aug. 27, 2025) (emphasis in original). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *18. Specifically, § 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1032 (9th Cir. 1998).

The Court concludes that it has jurisdiction because Petitioner does not challenge Respondents' decision to execute a removal order, which would bar this Court's review. Instead, she challenges the legality of her detention based on alleged violations of statutory, regulatory, and constitutional duties. Such claims fall squarely within the Court's habeas authority. *See Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e have limited [1252(g)]'s jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders."); *accord Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (interpreting 1252(g) to allow jurisdiction over detention challenges).

**B.      Lawfulness of Petitioner's Continued Detention Under 8 U.S.C. § 1231**

Section 1231 governs the arrest and detention of noncitizens subject to a final removal order. *See* 8 U.S.C. § 1231. It directs the Attorney General to effectuate removal "within a period of 90 days," known as the "removal period," during which detention is authorized. § 1231(a)(1)–(2). In *Zadvydas*, the Supreme Court clarified that detention beyond the removal period is presumptively lawful for up to six months; after that, a noncitizen may make a prima facie case for relief by sharing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," at which point the burden shifts to "the Government [to] respond with evidence sufficient to rebut that showing." 533 U.S. at 701. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the alien's release may be conditioned on any of the various forms of conditioned release, including an order of supervised release. *Id.* at 700.

The Court finds that Petitioner has satisfied her burden under *Zadvydas*. Petitioner was ordered removed on August 8, 2001, and the six-month presumptive detention period

expired long ago. Petitioner has presented evidence that removal to Mexico is uncertain. Indeed, in 2001 the immigration court reviewed her request for asylum, and though the court could not grant asylum due to a time bar, it granted her Withholding of Removal from Mexico, placing her under an Order of Supervision. Exhibits A, B, ECF No. 1.

In addition, there is no significant likelihood Petitioner may be removed to a third country in the reasonably foreseeable future. ECF No. 6-1 ¶¶ 11,12,13. As of January 7, 2026, Respondents were waiting for a response from ERO and RIO headquarters for an update on identifying a third country for removal, and as of late January, Respondent stated that "ICE is still in the process of identifying third countries that may be willing to accept Petitioner for removal." ECF No. 6-1 ¶ 13. This underscores the uncertainty and unlikely possibility that a third country may be identified in the near future. *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1081–82 (9th Cir. 2006) (holding that the government lacked authority to detain an individual indefinitely under § 1231 where removal was not reasonably foreseeable despite ongoing diplomatic efforts). Accordingly, Respondents have not demonstrated that Petitioner's removal is significantly likely in the reasonably foreseeable future, as required under *Zadvydas*, 533 U.S. at 701

### C. Procedural Safeguards Governing Revocation of Order of Supervision

A federal agency must follow its own regulations and procedures. *See Morton v. Ruiz,* 415 U.S. 199, 235 (1974). The revocation of release of noncitizens subject to a final removal order is governed by 8 C.F.R. §§ 241.4 and 241.13. To revoke an alien's release under section 241.13(i)(2), ICE is required to determine that the alien is significantly likely to be removed in the reasonably foreseeable future "on account of changed circumstances." § 241.13(i)(2). Upon revocation of release, the noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4, 241.13; *see also Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *4 (S.D. Cal. Oct. 10, 2025) (Listing cases that held "§ 241.4(l)(1)'s procedural

requirements apply equally to revocation of a noncitizen's release pursuant to § 241.4(l)(2).").

Here, Petitioner was arrested on December 19, 2025, and was provided a Notice of Revocation that same day. ECF No. 6-2. The Notice stated that "[t]here are changed circumstances in your case" therefore "ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you" and ICE "will attempt removal to a third alternate country." *Id.* This vague language does not indicate what circumstances changed that allowed ICE to be able to remove Petitioner now, when they were unable to do so following her order of removal in 2001.

Even assuming the notice sufficiently provided Petitioner with the reasons for the revocation as required, the interview given the same day failed to meet the requirements. Conducting the interview on the same day Petitioner was detained, while she was handcuffed in the interview room, without any advance notice and no opportunity to obtain documents or provide a thorough written response, denies Petitioner the ability to meaningfully respond to the reasons for her revocation. *See Hagos v. Noem,* 26-CV-150-JES-DEB, 2026 WL 202873, at * 3(S.D. Cal Jan. 27, 2026). The Court finds Respondents failed to comply with statutory process and violated Petitioner's due process rights when revoking Petitioner's release.

For these reasons, the Court finds that Petitioner has shown that ICE failed to follow their own regulations.

## IV.   CONCLUSION AND ORDER

Accordingly, the Court **GRANTS** the petition for writ of habeas corpus and **ORDERS** as follows:

1. Respondents are **ORDERED** to immediately release the petitioner from the Otay Mesa Detention Center.

1. Respondents are **ENJOINED** from re-detaining Petitioner unless there has been a change in circumstances that creates a reasonable likelihood of her removal in the reasonably foreseeable future as required under 8 C.F.R. §§ 241.4; 241.13.

2. Respondents are **ENJOINED** from imposing any form of Alternative to Detention, including an ankle monitor, home check-in schedule, or the continued confiscation of any documents or property she had when detained.

3. Respondents are **ENJOINED** from re-detaining Petitioner under 8 U.S.C. 1231 until they have obtained valid travel documents necessary for Petitioner's removal.

**IT IS SO ORDERED**.

Dated: March 12, 2026

_____
Honorable Benjamin J. Cheeks
United States District Judge